## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          :
ALBERTO TORRES-HERNANDEZ               :
                                          :
            Plaintiff,                   :        Civil Action No. 3:08-cv-1057-FLW
                                          :
                                          :
            v.                           :
                                          :
CVT PREPAID SOLUTIONS, INC.            :
                                          :                **OPINION**
            Defendant.                   :
                                          :
_____        :


**WOLFSON, United States District Judge:**

Presently before the Court is a motion filed by Defendant CVT Prepaid Solutions, Inc.

("Defendant") to dismiss Plaintiff Alberto Torres-Hernandez's ("Plaintiff") Complaint, in which

Plaintiff, individually and on behalf of all others similarly situated, asserts a claim arising under

the New Jersey Consumer Fraud Act, and common law claims for fraud and misrepresentation

and unjust enrichment. Alternatively, Defendant argues that jurisdiction over this matter properly

lies with the Federal Communications Commission ("FCC"). Generally, Plaintiff alleges that

Defendant's pre-paid calling cards did not provide the minutes advertised and paid for by

consumers.  For the reasons set forth herein, Defendants' motion to dismiss for lack of subject

matter jurisdiction is denied, and its motion to dismiss for failure to state a cause of action is

granted. However, Plaintiff shall be given leave to re-plead and file an Amended Complaint.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6),

all facts alleged in the complaint are assumed to be true. Plaintiff is a resident of New

Brunswick, New Jersey. Compl. ¶ 6. Defendant is a Delaware Corporation and a nationwide provider of prepaid calling cards that are distributed and sold in New Jersey.  Id. ¶¶ 5, 8.

Cardholders buy access to allotments of long distance telephone access via an automated computer system commonly referred to as a "platform." Id. ¶14. The platform monitors certain data points, namely the stated value of the prepaid calling card, the relevant rate table, the origin and destination of the call.  Id. A prepaid calling card is generally accompanied by a toll-free telephone number that the cardholder must use to place a long distance call, otherwise known as "plugging into the platform."  Id. Once the user has connected with the access number, the user will be prompted to enter his or her personal identification number ("PIN") found on the front or back of the card.  Id. After the platform verifies the PIN, the user is then asked to enter the number to which he or she wishes to connect. Id. The user, after entering the destination number, is notified via voice prompt as to the amount of minutes he or she hast left on that particular calling card.  Id. The gravamen of Plaintiff's Complaint is that Defendant's cards "virtually never provide the minutes advertised to consumers nor do they provide the minutes that the voice prompt indicates are available to the user." Id. ¶ 15.

As a result, Plaintiff filed this action on January 14, 2008, in the New Jersey Superior Court, Middlesex County Vicinage.  In his Complaint, Plaintiff alleges that "Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released pre-paid calling cards into the stream of commerce." Compl. ¶ 25. Pursuant to 28 U.S.C. 1446(a), the matter was removed to this Court on February 28, 2008. Defendant asserts that federal jurisdiction is proper pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), which provides that this Court has original jurisdiction over any class action (1) involving a plaintiff class of 100 or more members; (2) in which the amount in

2

controversy exceeds $5,000,000; and (3) where at least one member of the plaintiff class is diverse from defendant.  Thereafter, Defendant filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on March 6, 2008.

## II. DISCUSSION

### A. Standard of Review 12(b)(1)

When jurisdiction is challenged pursuant to Rule 12 (b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction.  Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings.  Id.  Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Id.

### B. Standard of Review 12(b)(6)

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting

Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

**C. Primary Jurisdiction**

Initially, Defendant asserts that this Court should defer to the Federal Communications Commission ("FCC") and its interstate telecommunication expertise in the present matter under the doctrine of primary jurisdiction.  In response, Plaintiff argues that the case at bar is devoid of technical questions and potential regulatory conflicts, and as such, this Court may exercise jurisdiction.

Defendant's argument that this Court should defer to the FCC constitutes a challenge to this Court's subject matter jurisdiction.  The Supreme Court, in Far East Conference v. United States, 342 U.S. 570, 574-75 (1952), expounded on the doctrine of primary jurisdiction:

> [A] principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

4

The doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc., 287 F. Supp. 2d 532, 548 (D.N.J. 2003). Thus, cases involving specific technical or policy considerations within an agency's area of expertise should be referred to the appropriate administrative agency. MCI Communications Corp. v. American Telephone & Telegraph Co., 496 F.2d 214, 220 (3d Cir. 1974). The doctrine ensures a "workable relationship between the courts and administrative agencies wherein. . .the court can have the benefit of an agency's views on issues within the agency's competence." MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1105 (3d Cir. 1995).

Additionally, the possibility that a conflict may arise if a court were to decide a matter inextricably intertwined with an intensive regulatory scheme requires judicial abstention in such cases. Cheney State College Faculty v. Hufstedler, 703 F.2d 732, 736 (3d Cir. 1983); American Telephone, 496 F.2d at 220 (finding that the doctrine was created to "avoid conflict between the court and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court."). However, a court need not defer review in every cause of action that requires a court to deal with regulatory rules. The Business Edge Group, Inc. v. Champion Mortgage Company, Inc., 519 F.3d 150, 154 (3d Cir. 2007). Such cases may be handled by a district court if the issues before it can be resolved "using the plain language of the [regulations] and ordinary rules of construction." Id. (quoting Advance United Expressways, Inc. v. Eastman Kodak Co., 965 F.2d 1347, 1353 (5th Cir. 1992)).

Even though the Third Circuit has visited the issue of primary jurisdiction on several occasions, there remains "no fixed formula for determining whether the doctrine of primary

jurisdiction applies." Global Naps, 287 F. Supp. 2d at 549. It is more appropriate for a court to evaluate issues of primary jurisdiction on a case-by-case basis. Nonetheless, the Global Naps court adopted four factors that can guide a court's analysis in such inquiries:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

Id. (citing Oh v. AT & T Corp., 76 F. Supp. 2d 551, 557 (D.N.J. 1999)). This Court also turns to the resolution of other disputes over primary jurisdiction in the Third Circuit. For instance, in American Telephone, a group of communication carriers brought suit to compel telephone companies to provide interconnection services. 496 F.2d at 220. The Third Circuit found that the district court should have deferred to the FCC for two reasons: (1) the FCC had issued two separate rulings around the time of the dispute dealing with interconnection services; and (2) proceedings before the FCC had recently been initiated that dealt with the same issues raised by the plaintiffs. Id.

In the instant matter, Defendant directs the Court's attention to the FCC's broad, sweeping regulation of interstate communications, namely pre-paid calling cards. Specifically, Defendant cites to recent regulatory decisions rendered by the FCC concerning the pre-paid calling card industry. Def.'s Br. Pg. 6 (citing 21 FCC Rcd 7290 (2006) and 20 FCC Rcd 4826 (2005)). The crux of Defendant's argument is simple: this Court's adjudication of this matter could conflict and upset the FCC's expansive regulatory scheme over pre-paid calling cards. Although there is no pending hearing before the FCC concerning this specific issue, Defendant argue that pursuant to Section 201(b) of the Communications Act of 1934, the FCC provides Plaintiff with a more

appropriate forum to adjudicate his claims.  In response, Plaintiff charges "[t]here is no appreciable danger of inconsistent rulings; either consumers received the appropriate minutes on prepaid calling cards, or the converse is true."  This Court agrees.

Applying the Global Naps factors, the Court finds that Plaintiff's Complaint is properly before this Court.  Simply put, the case at bar requires this Court to determine whether Plaintiff and those similarly situated received what they bargained for.  In arguing that this Court should defer to the FCC, Defendant does not list any pending hearings involving issues that if they were to be decided before this Court would give rise to a conflict with the current FCC regulatory scheme.  Unlike American Telephone, where the FCC had made two previous rulings directly on point and another hearing was scheduled to deal with the contested issues in that case, no previous FCC ruling has been cited by Defendant that governs the specific issue in this case, namely the regulation of allegedly fraudulently advertised pre-paid calling cards and recourse for the average consumer.  See 496 F.2d at 220.  Instead, Defendant relies on broad FCC regulations that promulgate general administrative rules that have no bearing on the discrete issues in the case at bar.  For example, In re Vista Services Corp., 15 FCC Rcd 20646 (Oct. 18, 2000), an FCC ruling cited by Defendant, does not confer sole jurisdiction on the FCC with respect to the marketing of telecommunication providers, rather it states that the FCC may adjudicate claims under 201(b) of the Communications Act of 1934.  The case at bar deals with issues arising from Defendant's supposed violation of the NJCFA, not 201(b).

Moreover, Defendant's position on primary jurisdiction is untenable.  Taken to its logical extreme, Defendant's proposed application of the doctrine would permit a pharmaceutical company to avoid negligence claims in federal court by invoking the Food and Drug Administration's authority (putting aside any preemption issues), or force a state court to defer

consumer fraud actions against a commercial bank due to Federal Reserve oversight. Primary jurisdiction is an exceptional doctrine reserved for those technical cases that would conflict with specific federal regulations or pending agency hearings.  It is not an alternate route for federally regulated businesses to take as a way to avoid civil litigation with consumer plaintiffs. Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.

### D. Plaintiff's NJCFA Claim

Defendant also challenges Plaintiff's Complaint on the ground that it fails to sufficiently state a cause of action under the NJCFA.[1] The Act is intended to protect consumers who purchase "goods or services generally sold to the public at large."  Marascio v. Campanella, 298 N.J.Super. 491 (App. Div. 1997).  To state a claim under the NJCFA, a plaintiff must allege:

> "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." [Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994). The NJCFA defines unlawful practice broadly, as including but not limited to unconscionable commercial practice, deception, fraud, false promise, false pretense misrepresentation, or knowing concealment.  N.J.S.A. 65:8-2.

Kalow & Springnut, LLP v. Commence Corp., No. 07-3442, 2008 U.S. Dist. LEXIS 48036, at *9-10 (D.N.J. June 23, 2008) (citation omitted).

Because Plaintiff alleges violation[2] of the NJCFA, Plaintiff's Complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Naporano Iron & Metal Co. v.

---

[1]    In his Amended Complaint, Plaintiff needs to clarify whether this action is on behalf of consumers nationwide or only applies to New Jersey consumers.  Such clarification is necessary to determine the applicability of the NJCFA to other plaintiffs as well as other choice of law issues.

[2]    Plaintiff does not state whether he purchased one card or multiple cards.  Thus, this Court cannot determine whether Plaintiff alleges more than one violation of the NJCFA.

American Crane Corp., 79 F. Supp. 2d 494, 510 (D.N.J. 2000) (finding that the plaintiff's

NJCFA claim was subject to 9(b)'s heightened pleading standard); Slim CD, Inc. v. Heartland

Payment Sys., No. 06-2256, 2007 U.S. Dist. Lexis 62536, at *32 (D.N.J. Aug. 22 2007) ("The

pleading requirements of Rule 9(b) apply to. . .NJCFA claims as well as. . .common law fraud

claims.").  Recently, this Court reiterated what must be alleged to satisfy the heightened pleading

standard:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of
> the alleged fraud with sufficient particularity to place the defendant on notice of
> the precise misconduct with which [it is] charged." Lum v. Bank of America, 361
> F.3d 217, 223-24 (3d Cir. 2004). To satisfy this standard the plaintiff must plead
> or allege the date, time and place of the alleged fraud or otherwise inject precision
> or some measure of substantiation into a fraud allegation. See id. at 224.

Kalow, 2008 U.S. Dist. LEXIS 48036 at *10-11 (quoting Federico, 507 F.3d at 200).  This

heightened pleading standard applies to all three prongs of an NJCFA claim. Kalow, 2008 U.S.

Dist. LEXIS 48036 at *10.

    A properly plead NJFCA claim requires a plaintiff to allege "unlawful conduct by the

defendants."  Unlawful conduct or practices, as defined by the Act, consist of:

> The act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing concealment, suppression, or omission of any material fact with intent
> that others rely upon such concealment, suppression, or omission, in connection
> with the sale or advertise of any merchandise.

N.J.S.A. 56:8-2. In other words, unlawful practices fall into one of three general categories: (1)

affirmative acts; (2) knowing omissions; and (3) regulation violations.  Federico, 507 F.3d at 202

(citation omitted).  When the alleged consumer fraud consists of an affirmative act, it is

unnecessary for the plaintiff to prove that the defendant intended to commit an unlawful act.

Slim CD, 2007 U.S. Dist. LEXIS 62536, at *32. Under the NJCFA, an affirmative representation

9

is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Mango v. Pierce-Coombs, 370 N.J.Super. 239 (App. Div. 2004). By contrast, when the alleged consumer fraud is an omission, intent is an essential element of the charge. Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997).  In Kalow, this Court found these allegations plead under the NJCFA as insufficient to withstand a motion to dismiss: "Defendant engaged in unfair, false, deceptive, and misleading practices, representations, and omissions in representing that it produced good quality software that business should rely upon and that it would stand behind software."Kalow, 2008 U.S. Dist. LEXIS 48036 at *11.  The Kalow complaint merely restated the language that defined an unlawful practice contained in the NJCFA's statutory language and made fleeting reference to an alleged misrepresentation on the part of the defendant. Id.

Here, Plaintiff's Complaint suffers from a similar defect as the allegations in Kalow, alleging, without specificity, that "Defendant concealed, that the amount of minutes advertised are in excess of the actual amount of minutes a user of their cards can actually utilize" and a recitation of the NJCFA's statutory language."  Compl. ¶¶ 30-31. After reviewing Plaintiff's Complaint, the Court finds no specific factual allegations, the what, where, and when of Defendant's alleged misrepresentations, necessary to sustain a cause of action under the NJCFA. Hypothetically, Plaintiff's allegations would need to indicate specific misrepresentations, such as Defendant selling calling cards that specifically advertised that they contained 120 minutes when in fact Defendant knew the card would only provide 100 minutes worth of calling time for the cardholder.  With respect to the marketing allegations, general allegations of concealment on the part of a defendant are insufficient to sustain an NJCFA claim. Cooper v. Samsung Electronics America, Inc., No. 07-3853, 2008 WL 4513924, at *8 (D.N.J. Sept. 30, 2008).  Plaintiff fails to

10

supply any details as to the character of the marketing and advertising materials. See id. (finding that a plaintiff's consumer fraud claim was deficient when he failed to specify which marketing or advertising materials allegedly mislead him in his purchase of the defendant's product).

Moreover, Plaintiff's Complaint is devoid of any allegations that would be sufficient to set forth the causal relationship between Defendant's unlawful conduct and Plaintiff's ascertainable loss.[3] To properly plead a causal nexus, a plaintiff cannot rely on legal conclusions that fail to allege "when statements were made or when the plaintiffs were exposed to the statements." In Dewey v. Volkswagen, the court provided an example of a sufficiently plead causal nexus:

> For example, in order to demonstrate the required causal nexus, Plaintiffs might be expected to plead facts stating whether the allegedly fraudulent statements on the website were on the website at the time that any of the individual Plaintiffs were deciding whether to purchase a Volkswagen, and whether any of the Plaintiffs saw those statements on Volkswagen's website.

558 F. Supp. 2d 505 (D.N.J. 2008). Thus, allegations set forth in "broad-brush fashion" will not suffice. Kalow, 2008 U.S. Dist. LEXIS 48036, at *17. Here, Plaintiff's alleges in conclusory

---

[3]   Additionally, Plaintiff must plead a specific ascertainable loss. A sufficiently plead ascertainable loss is one with enough specificity as to give the defendant notice of possible damages. Thus, in Seville Industry Machine Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), a plaintiff satisfied the ascertainable loss pleading requirements "by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud." Further, in Kalow, this Court found sufficient an alleged dollar amount lost by the plaintiff when it was forced to purchase a different product upgrade provided by the defendant. 2008 U.S. Dist. LEXIS 48036, at *10. Here, Plaintiff "incur[red] monetary expense and has suffered an ascertainable economic loss that includes the purchase price of the pre-paid calling cards and the difference in price between the purchase price of the pre-paid cards and the fair market value for the actual minutes plaintiff received for which Defendants are liable to Plaintiff for treble Plaintiff's actual damages." Compl. ¶ 35. Although there is no specific dollar amount alleged in Plaintiff's Complaint, that level of specificity is not required by the case law and Rule 9(b). However, the fact that Plaintiff fails to allege which calling card denominations he purchased, e.g.. a 120 minute calling card, precludes Plaintiff from sufficiently pleading ascertainable loss. Thus, if Plaintiff properly pleads the other two elements of the NJCFA, Plaintiff will also be able to plead ascertainable loss.

fashion that "[a]s a direct and proximate result of the acts of consumer fraud set forth above, Plaintiff has purchased and used prepaid calling cards which caused him to incur monetary expense and has suffered an ascertainable economic loss." Compl. ¶ 35.  At its most basic level, Plaintiff has failed to allege when he purchased his calling card(s), what he relied upon regarding the minutes he purchased and how many calling minutes he actually received. These allegations as to a causal nexus between Defendant's alleged unlawful practices and Plaintiff's ascertainable loss do not withstand a motion to dismiss. Accordingly, Plaintiff's NJCFA claim is dismissed without prejudice.

**E. Plaintiff's Fraud and Misrepresentation Claim**

Additionally, Defendant seeks the dismissal of Count Two for failure to comply with Fed. R. Civ. P. 9(b).  Rule 9(b) requires "[i]n all averments of fraud…, the circumstances constituting fraud. . .shall be stated with particularity." Fed. R. Civ. P. 9(b). In <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004), the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.  See [<u>Saporito v. Combustion Eng'g</u>, 843 F.2d 666, 675 (3d Cir.1988)]; <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658-59 (3d Cir. 1998); <u>Klein v. General Nutrition Cos.</u>, 186 F.3d 338, 345 (3d Cir.1999).

Thus, the nature or subject of the fraud, or an indication of who made the alleged representations

and to whom, must be set forth in the plaintiff's pleadings. <u>A-Valey Engineers, Inc. v. Board of Freeholders of Camden</u>, 106 F. Supp. 2d 711, 716 (D.N.J. 2000). The Rule's heightened pleading requirements "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." <u>Naporano Iron & Metal Co. v. American Crane Corp.</u>, 79 F. Supp. 2d, 494, 511 (D.N.J. 2000). With respect to a class action claim, "less specificity is required when the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings." <u>Szczubelek v. Cendant Mortgage Corp.</u>, No. 00-1858, 2001 WL 34875217, at *3 (D.N.J. Jun. 15, 2001). However, this less stringent standard does not obviate the need for a lead plaintiff to set forth specific factual misrepresentations as to his particular allegations. <u>Id.</u>

As to Count Two, Plaintiff merely alleges in his Complaint that "Defendant made these misrepresentations and actively concealed adverse information" and "Defendant omitted, suppressed or concealed material facts in order to increase the sales of the product." Compl. ¶¶ 39-40. Although Rule 9(b)'s strictures are less exacting for class action complaints, Plaintiff's vague, conclusory allegations as to Defendant's alleged fraudulent acts are insufficient. The Complaint contains no factual substantiation of alleged fraudulent acts taken on the part of Defendant, presumably the specific misrepresentation of actual minutes on Defendant's pre-paid calling cards that Plaintiff purchased. Moreover, no general time period in which the alleged misrepresentations took place is set forth anywhere in Plaintiff's Complaint. In sum, Plaintiff's allegations "suffers from the precise problems that Rule 9(b) aims to prevent," that is failing to give the defendant the appropriate notice of the claims alleged against him and the specific fraudulent acts underlying the plaintiff's pleadings. <u>Naporano</u>, 79 F. Supp. 2d at 512.

13

Accordingly, Count Two of Plaintiff's Complaint is dismissed without prejudice.

### F. Plaintiff's Unjust Enrichment Claim

Finally, Defendant moves to dismiss Plaintiff's unjust enrichment claim.  Defendant

contends that Plaintiff's unjust enrichment claim is simply derivative of the fraud claims set

forth in Counts I and II, and as such, should be dismissed.  In his Complaint, Plaintiff alleges

that "[i]n accepting payment for prepaid phone cards which virtually never provide the minutes

advertised to consumers, Defendant has been unjustly enriched."

 With respect to Defendant's assertion that Count Three is nothing more than a derivative

claim of Counts One and Two, this Court disagrees.  An unjust enrichment claim may be

sustained independently as an alternative theory of recovery.  In re K-Dur Antitrust Litigation,

338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding defendant's motion to dismiss plaintiff's unjust

enrichment claim as premature even where other remedies at law were available to plaintiff); see

also United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D.Pa. 1991) (allowing

plaintiff to assert an unjust enrichment claim as an alternative theory of recovery when plaintiff

had asserted a cognizable contract claim in the same complaint). Thus, this Court must

determine whether Plaintiff's allegations give rise to an unjust enrichment claim.

At the onset, the Court notes that an unjust enrichment claim need not be pled with the same

specificity as a claim sounding in fraud.  Rather, the more liberal notice pleading standard of

Fed. R. Civ. 8(a) applies.  An unjust enrichment claim requires plaintiff to allege "(1) at

plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it

unjust for defendant to retain benefit without paying for it." In re K-Dur Antitrust Litigation, 338

F. Supp. 2d 517, 544 (D.N.J. 2004) (quoting RESTATEMENT OF RESTITUTION 1 (1937).

Further, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected

remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). However, New Jersey law does not recognize unjust enrichment as an independent tort cause of action. Cafaro v. HMC, No. 07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008) (finding that the plaintiffs' unjust enrichment claim should be dismissed because the allegations sounded in tort and not in quasi-contract). Rather, "unjust enrichment. . .requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant." VRG, 135 N.J. at 554. Thus, where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed. See Cafaro, 2008 WL 4224801, at *12.

Here, the Court is unable to discern whether Plaintiff's unjust enrichment claim is based on a quasi-contractual or implied contractual relationship with the expectation of remuneration or is alleged as an independent tort cause of action. Plaintiff's Complaint contains two counts arising from fraudulent misrepresentations and an unjust enrichment claim that simply relies on the allegations set forth in Counts One and Two. Accordingly, this Court dismisses Count Three of Plaintiff's Complaint without prejudice.

### G. Plaintiff's Request for Leave to File Amended Complaint

Plaintiff requests leave to amend his Complaint should the Court grant Defendant's motion to dismiss. Since Plaintiff may have sufficient information to properly allege an NJCFA, fraud and misrepresentation, and unjust enrichment claim, this Court will give Plaintiff leave to amend his Complaint.

**III. CONCLUSION**

For the foregoing, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.  However, Plaintiff's Complaint is dismissed without prejudice and Plaintiff shall be given leave to re-plead and file an Amended Complaint within 30 days.


Dated December 9, 2008                              /s/ Freda L. Wolfson
                                                   Freda L. Wolfson, U.S.D.J